VIVID TECHNOLOGIES, INC.,
Plaintiff–Appellee,

v.

AMERICAN SCIENCE &
ENGINEERING, INC.,
Defendant–Appellant.

No. 98–1303.

United States Court of Appeals,
Federal Circuit.

Dec. 29, 1999.

Ivan S. Kavrukov, Cooper & Dunham LLP, of New York, New York; and Kenneth R. Berman, Sherin and Lodgen LLP, of Boston, Massachusetts, argued for plaintiff-appellee. Of counsel on the brief was Wendy E. Miller, Cooper & Dunham LLP.

Gary R. Greenberg, Goldstein & Manello, P.C., of Boston, Massachusetts, argued for defendant-appellant. With him on the brief was Louis J. Scerra, Jr.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In this declaratory judgment action brought by Vivid Technologies, Inc., the United States District Court for the District of Massachusetts held on summary judgment that Vivid's X-ray device did not literally infringe United States Patent No. 5,253,283 (the '283 patent) owned by American Science and Engineering, Inc. (AS & E). AS & E asserts that the district court's claim construction was incorrect, and that the summary judgment of noninfringement, including the denial of all discovery, was based on harmful procedural error as well as incorrect in law.

We affirm the district court's claim construction, vacate the summary judgment, and remand for appropriate further proceedings.

## BACKGROUND

X-ray machines for security purposes, adapted to the detection of threat items such as weapons and explosives, are widely used in airports and other secured places. Such machines operate by way of a source of X-ray radiation, one or more detectors of the radiation response, and a display system. When an item to be examined is placed in the radiation path the contents attenuate (partially block), and scatter (deflect) the radiation, to varying degrees.

Transmitted radiation is radiation that travels in a straight path from the X-ray source to the detector. X-rays that an item scatters at angles of greater than ninety degrees with respect to the original direction of travel are called backscatter, and X-rays that an item scatters at angles of less than ninety degrees with respect to the original direction of travel are called forward scatter. The detectors receive these radiation responses, from which images of the contents are produced, generally with the aid of a computer, and displayed on a screen in patterns of light composed of pixels. Pixels are dot-like components that emit light of varying intensities. Threat materials with high atomic numbers, such as metal weapons, tend to attenuate more radiation than they scatter, while threat materials with low atomic numbers, such as plastic explosives, tend to scatter more radiation than they attenuate. Thus enhanced detection is obtained from X-ray responses to both transmitted radiation and scattered radiation.

As discussed in the '283 patent, it was known to use both transmitted and scattered X-ray radiation in detection devices. However, the images produced by prior art devices were typically presented in grey tones, and often were difficult for an operator to interpret quickly and accurately. To improve detection, the invention described in the '283 patent displays in separate colors those objects that exhibit a suspicious response as measured by backscattered and by transmitted radiation, thus enhancing the speed and accuracy of operator performance. The apparatus is illustrated in patent Figure 1, showing transmission detector 50, backscatter detectors 25A and 25B, and the object to be inspected 40:

FIG. I

Vivid produces an X-ray security device that uses backscattered and transmitted radiation along with other criteria in detecting suspicious objects, and that marks suspicious objects in color. Vivid brought an action for declaratory judgment that it "neither infringed, induced infringement, nor contributed to the infringement of United States Patent No. 5,313,511, United States Patent No. 4,799,247, or any other patent owned by American Science & Engineering, Inc. covering x-ray backscatter technology." Vivid also asked that any patents found to be infringed be declared invalid. AS & E's response included a counterclaim charging Vivid with infringement of one or more of eight specified patents, including the two patents named by Vivid.

Vivid requested clarification from AS & E as to precisely which claims of which patents were included in the counterclaim. AS & E responded that it could not provide this specificity until it had further information concerning Vivid's machines, stating: "Obviously, after Vivid has disclosed the information and documentation which is solely in Vivid's possession and control, AS & E will be able to identify the precise patents and claims." Vivid moved to strike AS & E's counterclaim on the ground that AS & E had violated Fed. R.Civ.P. 11[1] by filing the counterclaim without sufficient knowledge of whether Vivid was in fact infringing these eight patents. The district court granted Vivid's motion, and at Vivid's request ordered that discovery be stayed. The court stated

1. Rule 11(b). **Representations to Court.**

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to

cause unnecessary delay or needless increase in the cost of litigation;

. . . . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and . . . .

that AS & E could move for leave to file an amended counterclaim, but that the proposed amendment must have a proper Rule 11 basis. The court cautioned that AS & E could not simply present an infringement counterclaim for which supporting evidence might later be discovered.

AS & E duly moved for leave to file an amended counterclaim, reducing its charge of infringement from eight patents to only the '283 patent, and limited to claims 5 and 8 of that patent. AS & E included a statement of claim construction in its motion, explaining each clause of claims 5 and 8 and stating its reasons for believing that the claims read on the Vivid device. The district court denied leave to file the amended counterclaim "for the same reasons I allowed the motion to strike the original counterclaim."

Vivid then limited its declaratory complaint to the '283 patent, the subject of the rejected counterclaim. The district court held a *Markman* hearing and construed claims 5 and 8 of the '283 patent.[2] At the district court's suggestion Vivid then moved for summary judgment of non-infringement, stating, *inter alia,* that certain elements of claims 5 and 8 were not present in the Vivid machines. AS & E then requested discovery under Fed.R.Civ.P. 56(f), on the ground that discovery was necessary in order to determine if Vivid's machines indeed omitted these elements. The court denied the request and entered final judgment that Vivid's "x-ray device does not literally infringe on the '283 patent."[3] AS & E appeals, challenging the claim construction, the summary judgment, and the adverse procedural rulings. AS & E also states that it is entitled to determination of infringement under the doctrine of equivalents, a subject not decided by the district court.

## THE INFRINGEMENT COUNTERCLAIM

Fed.R.Civ.P. 13(a) requires that a party plead a counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," lest the subject of the counterclaim be deemed waived or abandoned. Rule 13(a) recognizes that when disputed issues arise from the same operative facts, fairness as well as efficiency require that the issues be raised for resolution in the same action. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1417, at 129 (2d ed.1990) ("failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim") (citing cases). Professor Wright identifies four tests, any one of which can render a counterclaim compulsory: (1) whether the legal and factual issues raised by the claim and counterclaim are largely the same; (2) whether, absent the compulsory counterclaim rule, *res judicata* would bar a subsequent suit on the counterclaim; (3) whether substantially the same evidence supports or refutes both the claim and counterclaim; or (4) whether there is a logical relation between the claim and counterclaim. *See id.* § 1410, at 52–58 (citing cases).

A counterclaim for patent infringement, in an action for declaration of non-infringement of the same patent, readily meets all four of these criteria. *See id.* at 73 ("Any counterclaim involving the same patent as is involved in the original action usually is considered to arise from the same transaction as the main claim.") (citing cases). Of the cases compiled in the treatises and that we have found, every court that has discussed the issue has recognized that an infringement counterclaim is compulsory in an action for declaration of non-infringement. *See, e.g., Genentech,*

2. *Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 997 F.Supp. 93 (D.Mass.1997) (claim construction).

3. *Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 997 F.Supp. 104 (D.Mass.1998) (summary judgment).

*Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 947, 27 USPQ2d 1241, 1253 (Fed.Cir.1993) (in a declaratory action for non-infringement, the defendant had to bring a counterclaim for patent infringement "or be forever barred from doing so"); *International Video Corp. v. Ampex Corp.*, 484 F.2d 634, 179 USPQ 260 (9th Cir.1973) (recognizing compulsory nature of counterclaim for patent infringement and holding that dismissal of declaratory complaint for lack of jurisdiction required dismissal of counterclaim on same ground); *Akzona, Inc. v. E.I. du Pont de Nemours & Co.*, 662 F.Supp. 603, 618, 4 USPQ2d 1113, 1123 (D.Del.1987) (in a declaratory action for non-infringement of several patents, a counterclaim for infringement of the same patents "is clearly within the mandate of Rule 13(a)").

■ In denying AS & E's motion for leave to file the amended counterclaim, the district court commented that AS & E offered inconsistent and implausible claim interpretations, and concluded that the counterclaim would be shown to be "invalid." At this pleading stage, however, speculation about the ultimate disposition of the claim is not an appropriate basis for refusing the pleading. The Supreme Court has explained:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the

principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnotes omitted).

Vivid proposes that the counterclaim was properly dismissed as futile because there is no infringement. However, prejudgment of the ultimate result is not a proper ground for refusing to enter a compulsory pleading on an issue whose merits have not yet been decided. Although the district court expressed concern that AS & E was not consistent in its claim interpretations, the issue of claim interpretation had not yet been heard. While the court also stated that entry of the counterclaim would cause unnecessary delay and expense, it is not apparent how this might occur, for the counterclaim raised no additional issues, the same patent was the subject of claim and counterclaim, and the parties bore the same evidentiary burdens whether or not the counterclaim was permitted. *See* 12 James Wm. Moore et al., *Moore's Federal Practice* '57.62[2][d] (3d ed.1997) (in patent cases "courts have generally recognized that any role reversal occasioned by declaratory relief should not shift the burden of proof from the manner in which it would be assigned in a coercive infringement suit").

■ The right to file a counterclaim for patent infringement in response to a declaratory action for patent non-infringement is unique to patent law and warrants a uniform national rule. *See Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858–59, 20 USPQ2d 1252, 1259 (Fed.Cir. 1991). As we have discussed, it is generally recognized that when the same patent is at issue in an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived. Such a counterclaim ordinarily should not be refused entry.

■ While we need not decide whether AS & E's initial counterclaim was properly

refused entry on Rule 11 grounds, the amended counterclaim was specifically limited to two claims of one patent, was specific in terms of Rule 11, and violated no rule of pleading.[4] An otherwise proper counterclaim that would not succeed on its substantive merits, as the district court apparently believed, should ordinarily be disposed of on its merits and not by refusal to accept its filing. The refusal to accept the counterclaim for infringement, while proceeding to decide the merits of the claim of non-infringement of the same patent, exceeded the district court's discretionary authority. On remand, entry of the counterclaim shall be permitted.

## CLAIM CONSTRUCTION

■ Decision of the issue of infringement is based on a two-step analysis. First, the meaning and scope of any disputed terms and limiting expressions in the claims are determined as a matter of law. Then the claims as construed are applied to the accused device or method, a question of fact. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (*en banc* ), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891, 48 USPQ2d 1181, 1184 (Fed. Cir.1998). It is well recognized that the construction of the claims may resolve some or all of the issues of infringement. *See, e.g., EMI*, 157 F.3d at 889, 892, 48 USPQ2d at 1182, 1184 (affirming district court decision that resolved both literal infringement and the doctrine of equivalents "with no more trial than a two-day *Markman* hearing").

*Discovery in Connection with Claim Construction*

■ The district court construed the claims, having stayed all discovery. AS & E states that the court could not properly construe the claims until, at a minimum, there had been sufficient discovery of the accused device to understand which claim elements and what aspects of their interpretation were at issue, lest courts construe things that are not in dispute, thus rendering an advisory opinion. AS & E argues that claim construction should be done no earlier than the end of discovery, and urges this court to adopt a uniform rule to this effect. We see no need for such a rule, for the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case.

■ AS & E is correct that although the claims are construed objectively and without reference to the accused device, only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568, 41 USPQ2d 1225, 1236 (Fed.Cir.1997) (claim construction is for "resolution of disputed meanings"). It is routine case management to require litigants to identify the aspects of their case that are material to the dispute. In the case at bar the parties and the court knew with reasonable certainty which claim terms were at issue with respect to infringement; discovery was not needed for this purpose.

■ A district court has broad powers of case management, including the power to limit discovery to relevant subject mat-

4. Rule 8. **General Rules of Pleading**.
 (a) **Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim

needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded....

ter and to adjust discovery as appropriate to each phase of litigation. *See* Fed. R.Civ.P. 16(b), (c); 26(b); 42(b). When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved. *See* 8 Charles Alan Wright & Richard L. Marcus, *Federal Practice & Procedure* § 2040, at 521 (2d ed.1994) (citing cases). Thus the court's management of discovery at the claim construction stage may serve the salutary goals of speed and economy, and is appropriate in cases in which the dispute may be resolved at this stage without compromise of justice. *See* Fed. R.Civ.P. 1 (the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

We conclude that the district court acted within its discretionary authority in denying discovery of the Vivid machines in connection with the claim construction phase of the proceedings.

### The Disputed Claim Terms

 Claims are construed by the court as they would be understood by persons of skill in the field of the invention, for patents are written by and for skilled artisans. When the meaning or scope of a patent claim is in dispute the court construes the claim as a matter of law. *See Markman,* 52 F.3d at 979, 34 USPQ2d at 1329; *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (*en banc*). The construction of a patent claim starts with the claim itself, read in light of the specification. *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1116, 1 USPQ2d 1563, 1566 (Fed.Cir.1987). The prosecution history is often helpful in understanding the intended meaning as well as the scope of technical terms, and to establish whether any aspect thereof was restricted for purposes of patentability. *See Southwall Techs. Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676–77 (Fed.Cir.1995).

At issue are claims 5 and 8 of the '283 patent, shown with emphases added for the claim terms in dispute:

5. An apparatus for displaying information resulting from the inspection of an object with penetrating radiation, comprising:

means for illuminating an object with penetrating radiation,

means for receiving radiation which is transmitted through said object,

means for receiving radiation which is backscattered from said object,

*means for displaying pixels which correspond to at least a first presettable level* of attenuation of the transmitted radiation in a *first predetermined single color,* and

*means for displaying pixels which correspond to at least a second presettable level* of backscattered radiation in a *second predetermined single color.*

8. A method of displaying information resulting from the inspection of an object with penetrating radiation, comprising the steps of:

illuminating an object with penetrating radiation,

after said radiation interacts with said object, receiving radiation which is transmitted through said object and radiation which is backscattered from said object,

*displaying pixels which correspond to at least a first presettable level* of attenuation of the transmitted radiation in a *first predetermined single color,* and

*displaying pixels which correspond to at least a second presettable level* of backscattered radiation in a *second predetermined single color.*

### a. The "Presettable Level"

 In accordance with the '283 patent, objects whose attenuated and backscattered radiation responses correspond to "at least a ... presettable level" are identified in separate colors, a first color based on transmitted radiation and a sec-

ond color based on backscattered radiation. The district court construed "at least a ... presettable level" to mean that the pixels are illuminated when an object attenuates or scatters a quantity of radiation equal to or more than a quantified, preset threshold value. The district court held that this quantified threshold can be preset by an operator before the object is scanned. AS & E disputes this interpretation, pointing out that the claims do not limit "when, where, or how the level of backscattered radiation is preset." AS & E argues that "presettable" does not mean that the threshold level must be manually set before the actual scan, independent of the scanned object, but only that the machine is capable of being preset to a threshold level "before the display of pixels (as distinguished from pre-set before scanning)."

Vivid responds that the district court's claim construction is mandated by the claim language, the specification, and the prosecution history. On *de novo* review we reach the same conclusion as did the district court. The specification describes use of a color look-up table, which establishes the color of the displayed object based on the level of radiation response, and varies the intensity of a given color based on the amount that the radiation response exceeds the preset reference level. During prosecution, in response to a rejection on prior art, AS & E explained both the use and the significance of the preset levels:

> [I]n accordance with the present invention, appropriate reference levels for any given application are programmed into the system (see specification, page 8). These pre-set levels may obviously be changed, so that pixels which appear in a first color in a system where the first and second levels are pre-set at certain values, may appear in different colors, when the pre-set levels are changed. This flexibility to pre-set the threshold levels at which pixels are displayed in a single, unambiguous color is a useful

feature of the present invention, which is totally absent from [the cited reference].

Neither the specification nor the prosecution history suggests that the threshold levels of color display may be set after the radiation beam scans the object, or recognizes such a mode of operation. We conclude, as did the district court, that the term "presettable level" means that threshold levels of attenuated and backscattered radiation can be preset before the scan of the object.

### b. *Displaying in "Color"*

 The claims require that pixels be displayed in two predetermined colors, a first color for attenuated radiation and a second color for backscattered radiation. The district court construed the phrase "predetermined single color" to require display in a color "other than black and white and shades thereof." AS & E argues that the district court erred by so limiting the term "color." According to AS & E, a display in black and white and another color, such as green, would infringe claims 5 and 8. Vivid responds that such an interpretation would defeat the purpose of the invention, which is to avoid grey scale images.

The specification states that "[t]he present invention is directed to an inspection system having a color display." The specification describes prior art images displayed in black and white and shades of grey, points out that images in grey tones are often difficult for the operator to interpret and may become monotonous to watch, and acknowledges that to solve this grey tone problem in the prior art "it has heretofore been proposed to use color images." The specification states that in one prior art system the range of grey tones "is replaced with a range of different colors." Thus the specification makes clear that the patentee intended to distinguish "color" displays from grey tones including black and white displays.

We conclude, as did the district court, that "color" as used in the '283 patent

means colors other than black and white and shades thereof.

### c. "Displaying Pixels Which Correspond To"

■ The district court construed the words "correspond to" in context to mean that the pixels illuminated on the display screen must pictorially represent the threat object or the part thereof that caused the radiation response. The district court explained that it was applying the ordinary meaning of "correspond to":

> Although the lit pixels may not form a complete image of the object that is x-rayed, they correspond to characteristics of that object. The pixels display information about the point at which the interaction occurred between the radiation and the object scanned. They indicate whether or not the strength of the signal from the interaction exceeds the designated level and, by shading, give some information about how far the strength of the signal exceeds the designated level. Described in another way, the pattern made by the pixels of different colors develops an image of the threat object.

*Vivid Techs.,* 997 F.Supp. at 99. AS & E argues that the claims do not contain the limitation "image," and that "displaying pixels which correspond to" a level of radiation does not require displaying an image of the object. Vivid responds that the specification does not permit this interpretation.

The specification defines a pixel as "an elementary portion of an image that will be formed and displayed." In discussing the pixel display resulting from the radiation response, the specification states that "the intensity of the pixel can be used to represent the attenuation presented to the illumination beam by the portion of the object 40 which was illuminated when the pixel was generated," and that "the intensity of the pixel generated by the backscatter detector can be mapped to that region of the object 40 whose illumination by the penetrating pencil beam 30 produced the backscattered x-rays which generated the pixel." These and similar statements relate the pixels to the object or region thereof that produced the radiation response, whereby the pixels display an image of that object or part thereof. In view of the statements in the specification we conclude, as did the district court, that "correspond to" means that an illuminated image of the object or part thereof is displayed.

The district court's interpretation of the several disputed claim terms is affirmed.

### SUMMARY JUDGMENT

■ The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue. The court's construction of the claims may lead to summary disposition of the issue of infringement when no material facts remain in dispute, or when the nonmovant can not prevail on its view of the facts. *See Voice Techs. Group, Inc. v. VMC Sys., Inc.,* 164 F.3d 605, 612, 49 USPQ2d 1333, 1337 (Fed. Cir.1999). AS & E states that the factual issues of infringement, literal or by equivalency, could not be resolved as a matter of claim construction. AS & E also states that it was unjustly barred from discovery concerning Vivid's representations of facts material to infringement.

■ When the moving party does not have the burden of proof on the issue that is the subject of the summary judgment motion (the patentee bears the burden of proving infringement) the movant nonetheless bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law. If the movant meets its initial burden, the burden of coming forward shifts to the party opposing the motion. The opposing party does not, at this stage, have the burden of establishing that

it is entitled to judgment in its favor; it need only show either that the movant did not establish that it is entitled to judgment on undisputed facts or on the opposer's version of the facts, or that there are material issues of fact which require resolution at trial. *See* 2 Robert L. Haig, *Business and Commercial Litigation in Federal Courts,* '25.3(c),(d) (1998).

 On an issue for which the moving party does not have the burden of proof at trial, the moving party may meet its initial burden on the motion either by providing evidence that negates an essential element of the opposing party's case, or by showing that the evidence on file (such as pleadings, depositions, and admissions) establishes no material issue of fact and that the opposer will not be able to prove an essential element of its case. *Id.* at '25.3(d)(1); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In granting summary judgment the court must ensure that there is no reasonable version of material disputed facts whereby the nonmovant could prevail, *id.* at 250, 106 S.Ct. 2505, and that the judgment is correct as a matter of law.

### Discovery Under Rule 56(f) [5]

 On procedural issues not unique to the areas of law that are exclusively assigned to the Federal Circuit, the procedural law of the regional circuit is applied. *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1188 n. 2, 37 USPQ2d 1685, 1686 n. 2 (Fed.Cir.1996). Discovery under Rule 56(f) is of such a nature; thus we look to the First Circuit for the guidance of precedent in application of this Rule.

 The First Circuit, applying Rule 56(f), recognizes that summary judgment should not be granted when the party opposing the motion has shown " 'an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition.' " *Morrissey v. Boston Five Cents Savings Bank,* 54 F.3d 27, 35 (1st Cir.1995) (quoting *Resolution Trust Corp. v. North Bridge Assocs., Inc.,* 22 F.3d 1198, 1203 (1st Cir.1994)). Vivid's complaint was filed in May of 1996. Vivid had filed the statement required by Fed.R.Civ.P. 26(a)(1),[6] but copies of the listed documents were not provided to AS & E. AS & E had made a formal request for discovery and proposed an order to protect Vivid's confidentiality concerns, but no discovery had been agreed to by Vivid. The district court stayed discovery in October 1996, before any discovery was had. In July 1997 the district court construed the claims, and Vivid filed its motion for summary judgment in September 1997. AS & E then requested discovery under Rule 56(f). This request was denied, and final judgment was entered in January 1998.

Thus discovery was stayed early in this litigation and was never permitted. AS & E states that it had and has a good faith basis to believe that discovery would sup-

---

**5.** Rule 56(f). **When Affidavits are Unavailable.**

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**6.** Rule 26(a)(1). **Initial Disclosures.**

Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to other parties:

. . . . .

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings; . . .

port the charge of infringement, and would not only have negated the grant of summary judgment of non-infringement, but would warrant judgment in its favor. Vivid responds that AS & E's discovery requests were properly rejected because they did not identify specific facts that AS & E sought to prove through discovery, and did not show that discovery would produce evidence of those facts. According to Vivid, AS & E's discovery requests were designed to perform "a general education function and, in the process, fulfill AS & E's hope of finding helpful evidence to oppose Vivid's motion." Vivid denies that it is peculiarly in control of any material facts, referring to the *Dual Energy* article that was written by Vivid, and Vivid's product literature, as describing the Vivid system adequately for summary judgment purposes.

AS & E states that Vivid's summary judgment papers demonstrate the need for discovery concerning material facts. In support of its motion for summary judgment Vivid presented the affidavit of its Senior Vice President and Technical Director, Jay A. Stein, describing aspects of the Vivid technology. Mr. Stein averred that Vivid's system does not display an image representing detected backscatter, but draws a green rectangle around the suspected area, which Mr. Stein averred does not relate to any preset threshold of radiation. For example, the Stein affidavit contained the following statements:

22. Once Vivid's system determines there might be a threat-object/sheet-explosive in the lining of a bag, the system does *not* display an image of that object (or pixels of that object) in a color. If it did, the display of that object could obscure other objects in the path of the beam. Instead, the system generates a green hollow rectangle on the transmission images of the display to serve as a marker identifying the general area of the possible sheet explosive in the bag's lining....

23. The rectangle is not mapped to any object nor does it outline or correspond to any object. Its perimeter is not the perimeter of any object.

24. The highlighting of a bag with a hollow green rectangle is the result of complex calculations based on many factors that include transmission, forward scatter and backscatter measurements, bag height, size, density, and mass detected. Moreover, the Vivid system will place a green rectangular marker around an area whether or not the pixels exceed a pre-set threshold of backscatter. Indeed, this area could contain a thin sheet of explosive with low backscatter.

In opposing the motion, AS & E presented contravening affidavits concerning the facts placed at issue by paragraphs 22–24 of the Stein affidavit. In one such affidavit, AS & E's General Counsel, Jeffrey A. Bernfeld, averred that Vivid's *Dual Energy* article and product literature contradicted Vivid's statements that Vivid did not use backscatter radiation to display images of objects, that Vivid's green rectangle did not "correspond to" an object or part of an object, and that there was no mapping of green pixels to objects. Mr. Bernfeld pointed out that Vivid's product literature explicitly states that threat information is displayed in color and that "[c]ontinuously variable contrast adjustment allows the operator to easily 'slide' through levels of contrast to bring out details of objects...." He cited Vivid's statement in the *Dual Energy* article that the green rectangle indicates the "location of the threat" and that the system uses a "scatter image" in its calculations.

In its Rule 56(f) motion AS & E also relied on an affidavit of its Chief Technical Officer, Michael V. Hynes, who described an engineering conference he had attended on November 12, 1996 where Vivid employees provided technical information and demonstrated aspects of their system's operation. Mr. Hynes explained that at the conference Vivid's system was demonstrat-

ed by showing an irregularly shaped polygon corresponding to a threat object in a suitcase. It was explained that the object was identified as a threat based on certain predetermined threat criteria. Mr. Hynes averred that the threat object "was displayed with the spatial resolution of the transmitted image and further displayed with the display pixels corresponding to its edges highlighted in green." Vivid responded with a contradictory affidavit of the employees who conducted this demonstration. These facts were material to the issue of infringement, and could not be resolved adversely to AS & E. The denial of discovery with respect thereto inhibited AS & E's opposition to Vivid's motion for summary judgment.

In its motion Vivid also stated that it did not use color to display pixels that corresponded to the attenuation or scattering of radiation above a preset level, and that it did not use "thresholding technology" to identify threat objects. In AS & E's opposition Mr. Bernfeld pointed to statements in Vivid's own publications and in the November 1996 demonstration that appeared to contradict these assertions. Mr. Hynes averred that during the 1996 demonstration "Vivid personnel stressed the normalization of the image and the careful calibration procedures employed so that green highlighting occurred when a presettable threshold had been reached." Similarly, the *Dual Energy* article describes the computation, in the Vivid process, of "expected scatter." This quantity, according to the article, is calculated by assuming that the mass of a luggage bag is uniformly distributed throughout the volume of the bag, and estimating the scatter signals that would be obtained in such a situation. The Vivid device then processes the actual signals, looking for areas in the bag which produce more scatter than expected. AS & E states that the calculated "expected scatter" may reasonably be considered to correspond to the radiation threshold of the '283 patent, and that discovery was needed to establish this fact.

■■■■■ The grant of summary judgment of non-infringement, with respect to accused devices whose components or methods are not readily observable and are in dispute, requires sufficient discovery to assure that the issue has been fully and fairly resolved. Rule 56(f) serves the dual purpose of safeguarding against too hasty a grant of summary judgment, while requiring that parties who seek time for additional discovery have not been dilatory; such parties must (i) make an authoritative and timely proffer, (ii) show good cause for the failure to have discovered these essential facts sooner, (iii) present a plausible basis for the belief that there are discoverable facts sufficient to raise a genuine and material issue, and (iv) show that the facts are discoverable within a reasonable amount of time. *Morrissey*, 54 F.3d at 35. When a movant satisfies these requirements "a strong presumption arises in favor of relief." *Resolution Trust Corp.*, 22 F.3d at 1203. When a party who opposes a Rule 56(f) motion has control of the requested information, this factor "weighs heavily in favor of relief under Rule 56(f)." *Reid v. New Hampshire*, 56 F.3d 332, 342 (1st Cir.1995). The First Circuit has explained the burden under Rule 56(f) as follows:

> In short, the facts that the movant seeks to discover must be foreseeably capable of breathing life into his claim or defense.
>
> Evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise. Consequently, the threshold of materiality at this stage of a case is necessarily low.

*Resolution Trust*, 22 F.3d at 1207 (citations omitted).

■■■ The district court's denial of Rule 56(f) discovery is reviewed on the standard of abuse of discretion. In *Reid*, 56 F.3d at 341–42, the First Circuit found such an abuse of discretion, explaining, among other things, that the discovery sought in the case could arguably have generated a "tri-

alworthy issue of material fact." The Supreme Court teaches that disposition by summary judgment requires that the non-moving party has had adequate opportunity to discover information that is essential to its opposition. *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. 2505.

The district court rejected AS & E's requested discovery in its entirety. The court held that AS & E had failed to allege specific facts essential to its position, that discovery would not yield any basis for opposing the grant of summary judgment, and, since Vivid's information was proprietary, that discovery might give AS & E a legally impermissible competitive advantage in the marketplace. The court rejected AS & E's argument that there were contradictions and inconsistencies in Vivid's presentation and that there were disputed material facts:

> I have examined these so-called inconsistencies and contradictions. Merely because Vivid's Dual Energy article mentions measuring expected scatter does not create a contradiction or inconsistency that would assist the defendant in opposing summary judgment. Nor do the alleged comments of Vivid employees (contradicted by affidavit) assist the defendant in opposing summary judgment, especially in light of the reasons for my rulings [on summary judgment].

*Vivid Techs.*, 997 F.Supp. at 107–08. The court also criticized AS & E for not limiting its discovery requests to only what was material to its defense against Vivid's claim of non-infringement. Stating that simply verifying the information that Vivid had presented by affidavit is not a legitimate reason for additional discovery, the court concluded:

> In summary, AS & E's filings in support of its Rule 56(f) request fail to identify with any particularity those specific facts that it has some reasonable basis for believing it likely that the protracted, expensive, and probing discovery defendant seeks would produce evidence material to decision of plaintiff's motion for summary judgment.

*Id.* at 108.

Applying the criteria of Rule 56(f) as set forth by the First Circuit, AS & E was entitled to discovery relevant to the material facts in dispute. AS & E made a timely request under Rule 56(f), directly related to specific statements of material fact in the summary judgment motion and in the Stein affidavit. For instance, Mr. Stein averred that with respect to detection of potentially hazardous objects by way of scattered radiation, Vivid's system merely indicates such objects by way of a hollow green rectangle, not by displaying the threat object itself in color. *See* Stein Aff. at 5–6. Stein further stated that the rectangle does not outline a threat object, and that it is not "mapped" to any such object. *See id.* at 6. AS & E correctly pointed out, however, that these statements directly contradicted statements by Mr. Hynes, who indicated that he had observed a demonstration of the accused device in which the edges of particular threat objects were colored in green. *See* Hynes Aff. at 6. Also, Vivid's *Dual Energy* article on its face appears to contravene Vivid's assertions that it does not use "thresholding" technology, for "expected scatter" was shown to have the characteristics of a threshold level. These and other similar disputed factual issues, if resolved in favor of AS & E, would negate summary judgment of non-infringement. The information needed to resolve these issues was in Vivid's exclusive control.

AS & E's motion under Rule 56(f) satisfied the criteria of the Rule. In accordance with *Resolution Trust Corp.*, 22 F.3d at 1203, when a movant satisfies the requirements of Rule 56(f) "a strong presumption arises in favor of relief." On the showing made, the denial of all discovery at this stage exceeded the scope of the court's discretion. On remand, discovery shall be permitted sufficient to resolve issues of material fact relevant to infringement.

## The Summary Judgment

The district court granted Vivid's motion for summary judgment, ruling that there were three significant differences between the accused device and the patented device, thereby negating literal infringement.

### 1.

■ The district court found that the Vivid device considers factors in addition to radiation response when determining whether to highlight an object in color, and that on this ground there can not be literal infringement. The court cited Vivid's affiant, Mr. Stein, for his statement that the Vivid device uses measurements from x-rays transmitted at two energies, as well as measurements of the area and mass of the container, in computing whether a particular item is a threat. In view of the inclusion of these additional factors in the display calculation, the court concluded that it was not controlling whether Vivid's device used a radiation threshold in its "complex mathematical formula." The court held that the claims could not be infringed when factors in addition to radiation were considered in determining whether to display pixels in color.

AS & E argues that claims 5 and 8 require only that the color display "correspond to at least" the preset levels of radiation response, and that it is irrelevant to the infringement determination whether other factors known to affect the radiation response (such as area and mass of the object scanned) are also considered. Vivid responds that the '283 specification describes only color displays based on backscattered and transmitted radiation, and mentions no other factors that might be included in determining whether an object should be displayed in color. Thus Vivid argues that the claims are limited to a color display that responds only to the preset thresholds of backscattered and transmitted radiation.

This ground of summary judgment can not be sustained. The claims state only that the pixels "correspond to at least" the preset levels of attenuated and backscattered radiation. Whether such a correspondence exists is a matter of material fact, on which conflicting statements were presented by affidavit. This question of material technological fact could not be resolved adversely to the nonmovant AS & E on summary judgment, when AS & E had been prohibited from discovering the necessary evidence, which was in the sole control of Vivid.

■ Further, claims 5 and 8 use the signal "comprising," which is generally understood to signify that the claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited. *See Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178, 20 USPQ2d 1094, 1098 (Fed.Cir.1991) (a claim "which uses the term 'comprising' is an 'open' claim which will read on devices which add additional elements"); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271, 229 USPQ 805, 812 (Fed.Cir. 1986) ("comprising" opens a method claim to the inclusion of steps in addition to those stated in the claim). The signal "comprising" implements the general rule that absent some special circumstance or estoppel which excludes the additional factor, infringement is not avoided by the presence of elements or steps in addition to those specifically recited in the claim. It was not established, on the summary judgment record, that departure from this general rule is appropriate in this case. The grant of summary judgment on the ground that other elements are also measured, without considering their effect on the claimed invention, can not stand.

### 2.

■ The court found, citing specific paragraphs of the Stein affidavit, that "[b]ecause backscatter is just one of several variables used" (in addition to forward scatter and transmitted radiation) in identifying a threat object by marking it in color, Vivid's device does not literally in-

fringe the claims. The court found that the Vivid device included additional forms of radiation response as well as other factors such as density and mass in the calculation of its color response, as distinguished from AS & E's claims which state that each form of radiation response is related to a specific threshold and represented in a specific color. The court concluded that the Vivid device was thereby removed from the scope of claims 5 and 8.

As we have discussed, the signal "comprising" accommodates additional variables, provided that all of the elements stated in the claim are present. It was not established, on the summary judgment papers, whether the Vivid calculations met the radiation responses required by the claims. Summary judgment could not be granted solely on the movant's representations. Since this factual ground was material and in dispute, summary judgment was not available as a matter of law.

### 3.

Third, the court founded its summary judgment on its conclusion that the Vivid device did not literally infringe the "pre-settable" claim limitation. The court observed that "Jay Stein's affidavit does not directly address this point," but relied on a statement by Vivid's attorney that the Vivid machine "does not enable a machine operator to pre-set threshold radiation levels before the scanning of each object." AS & E counters that Vivid did not disclose sufficient information about the "expected scatter" calculation, and that "[i]t was thus impossible to determine when the [accused] device actually sets or adjusts the color-determining thresholds."

The truth of a disputed material fact can not be established on attorney statement alone. *See* 2 Scott L. Cagan,

*Judgments in Federal Court* '15.14, at 246 (Russell J. Davis et al. eds., 1997) ("Unsworn statements set forth in a brief or memorandum of law submitted by a party generally are not proper summary judgment evidence.") (citing cases); *cf. Nieves v. Univ. of Puerto Rico*, 7 F.3d 270, 276 n. 9 (1st Cir.1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment."). Vivid did not meet its initial burden of coming forward with evidence to establish the factual premise and support summary judgment based on this issue. Thus this third ground of summary judgment must also fail.

### Conclusion

On the district court's correct claim construction AS & E established that material facts are in dispute, and that on undisputed facts Vivid is not entitled to judgment as a matter of law. On infringement, the district court exceeded its discretionary authority in denying discovery to AS & E. The summary judgment is vacated. The issues of infringement, literal and under the doctrine of equivalents, require determination on remand.

No costs.

*CLAIM CONSTRUCTION AFFIRMED; SUMMARY JUDGMENT VACATED; REMANDED*