**CENTILLION DATA SYSTEMS, INC., Plaintiff,**

v.

**AMERICAN MANAGEMENT SYSTEMS, INC.; Frontier Corporation; Cable & Wireless USA, Inc.; and Sprint Spectrum, L.P., Defendants.**

**No. IP–98–1748–C–YF.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 2, 2001.

---

Michael Greenbaum, Blank, Rome, Comisky & McCauley, LLP, Washington, DC, G. Ronald Heath, Johnson, Smith & Heath, LLP, Indianapolis, IN. Matthew J Siembieda, Blank, Rome, Comisky & McCauley, LLP, Philadelphia, PA, for Plaintiff.

Amy R. Kennelly, Bose, McKinney & Evans, Indianapolis, IN, John R. Schaibley, III, Baker & Daniels, Indianapolis, IN, for Defendants.

**ENTRY AND ORDER on Defendant's Joint Motion for Expedited Ruling on the Insufficiency of Plaintiff's Opening Markman Brief (doc. no. 327).**

FOSTER, United States Magistrate Judge.

This Cause came before the Court on the above-entitled motion. The parties were heard on their papers and at hearing held on March 22, 2001, the record of which is incorporated as if set forth herein. The defendants' motion is granted as set forth below.

The case management plans (September 26, 2000 (doc. no. 301) and December 7, 2000 (doc. no. 326), Part IV) and order of the Court (September 1, 2000 (doc. no. 290)) established a claims construction briefing and hearing process in accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) ("*Markman I* "), *affirmed,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This schedule required plaintiff Centillion Data Systems ("Centillion") to file its *Markman* brief first, followed by the defendants' response brief, and concluding with Centillion's reply brief. The substantive law governing *Markman* rulings is now well-established:

> Construction of patent claims is a matter of law for the court. Claims are construed from the vantage point of a person of ordinary skill in the art at the time of the invention. In construing a claim, the court first looks to the intrinsic evidence of record, namely, the language of the claim, the specification, and the prosecution history. In most circumstances, the intrinsic evidence will provide sufficient information for construing the terms.

> \*　　\*　　\*　　\*　　\*　　\*

> If, after reviewing all available intrinsic evidence, some genuine ambiguity still exists in the claims, the court may look to extrinsic evidence as an aid in construing the claim language.... It may be used to assist the court's understanding of the patent, or the field of technology, but not to vary or contradict the terms of the claims.

*Jackson v. Thomson Consumer Electronics, Inc.*, 139 F.Supp.2d 1003, 1006–07 (S.D.Ind.2001) (citations omitted). The procedure applicable to *Markman* rulings is a matter of expedience for the court. Because Centillion initiated this suit and its patents, which it drafted and prosecuted, are in issue, the Court required Centil-

lion to provide its construction of its asserted claims first.

Centillion filed its opening *Markman* brief on December 1, 2000 (doc. no. 321). It explained the ideas and technology behind the subject '270 and '290 patents, the law of claim construction, and the broad meanings of terms found in the first claims of each patent. Centillion gave its detailed construction of only one term in Claim 1 of the '270 patent, the term "exact charges actually billed." At the hearing, the defendants advised that Centillion had previously identified 26[1] claims in the '270 patent and 9[2] claims in the '290 patent claims that it alleges have been and are being infringed. The defendants then filed the present motion in which they complain that Centillion's brief fails to provide its construction of every claim allegedly infringed. They ask the Court to limit Centillion's allegations in this Cause to infringement of only Claim 1 of both patents, order Centillion to supplement its *Markman* brief with detailed constructions of all terms of Claim 1 in addition to "exact charges actually billed", and to allow the defendants additional time to file their responsive *Markman* brief. In the alternative, they ask the Court to order Centillion to supplement its brief with constructions of every claim allegedly infringed in this Cause. At the hearing, the defendants produced a list of 45 claim terms that they contend are "genuinely in dispute". Hearing Exhibit 1 (March 23, 2001 Rankin Wigman letter, Exhibit A).

Centillion contends that it produced "a wholly sufficient and complete Markman brief" according to the relevant legal precedent. (Plaintiff Centillion Data System's Memorandum in Opposition to Defendants' Motion Concerning the Alleged Insufficiency of Centillion's Opening Markman Brief ("Response") (doc. no. 339), p. 9). It argues that, because a court's *Markman* ruling should construe only those claim terms that the parties genuinely dispute, "unless and until ***defendants*** propose meanings for these terms that are different from their ordinary and accustomed meanings ..., there is no controversy for the Court to resolve nor any issue for Centillion to address in its submissions to the Court on claim interpretation." (Response, p. 2) (original emphasis). In effect, Centillion contends that the defendants must brief their construction of Centillion's asserted claims first so that Centillion will know which terms are genuinely disputed and need to be briefed. At the hearing on the present motion and in its brief, Centillion relied primarily on the Court of Appeals for the Federal Circuit's decision in *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed.Cir.1999) ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").

■ The Court agrees with the teaching of *Vivid Technologies* and the other cases cited by Centillion and assures the parties that the Court's *Markman* ruling will construe only those terms which the parties genuinely dispute. But this is a limit on the scope of the Court's ruling, not on the parties' briefing. As *Vivid Technologies* itself recognizes, the principle

---

1. Three independent and twenty-three dependent claims. (Defendants' Memorandum in Support of Defendants' Joint Motion for Expedited Ruling on the Insufficiency of Centillion's Opening Markman Brief ("Brief") (doc. no. 328), p. 2); Hearing Exhibit 1 (March 23, 2001 Rankin Wigman letter).

2. Eight independent claims and one dependent claim. Hearing Exhibit 1 (March 23, 2001 Rankin–Wigman letter).

that a court should construe only disputed terms is intended to avoid *dictal* advisory opinions, *id.*, 200 F.3d at 803 ("lest courts construe things that are not in dispute, thus rendering an advisory opinion"), and the court employed that principle in the context of determining whether a *Markman* ruling was ripe, in other words, whether sufficient discovery had occurred so that the parties and the court "knew with reasonable certainty which claim terms were at issue with respect to infringement", *id.*, so that the Court would not issue constructions of unasserted claims. The focus was not on whether the parties knew with reasonable certainty which claim terms were "at issue" with respect to *construction* but with respect to *infringement.*[3] The defendant in *Vivid Technologies* objected to the district court's staying discovery and conducting a *Markman* hearing before there had been "sufficient discovery *of the accused device* to understand which claim elements and what aspects of their interpretation were at issue ...", *id.*, 200 F.3d at 803 (emphasis added); there is no indication that the defendant objected to a lack of discovery on the plaintiff's claims constructions. *Vivid Technologies* stands for the principle that, if a claim, an element of a claim, or an aspect of a claim is not material to a plaintiff's allegation of infringement, then a court need not and should not construe it as part of its *Markman* ruling. A corollary is that, before a *Markman* issue is

ripe, discovery or case management should have progressed to the point where the parties and the court can be reasonably certain which claims terms are at issue, in other words, which claims and elements the plaintiff alleges were infringed.

In this case, as cited above, Centillion has already identified the patent claims it alleges have been and are being infringed and, on inquiry from the Court, it did not identify any additional discovery it required in order to identify additional claims allegedly infringed. The Court concludes, therefore, that it and the parties are reasonably certain which claims and claim terms are at issue with respect to infringement and that the parties are ready for *Markman* briefing.

 Centillion is reluctant to provide its claims constructions first because it fears that "[w]hat defendants seek, of course, is to have Centillion further define and elaborate on the meaning of each term of every claim in the hope that Centillion will articulate some limitation that will enable defendants to construct an argument for non-infringement", (Response, p. 3), and the defendants surmise that Centillion fears being locked into its constructions.[4] But the patents in issue are Centillion's and it, not the defendants, initiated this suit alleging infringement of those patents. The logical order is for Centillion to provide its constructions of its claims first. Before it brought suit (or at least after it conducted

---

**3.** The Federal Circuit's focus on the identification of the claims being asserted, and not on the parties' constructions of those claims, is further evident in the broader quote:

> It is routine case management to require litigants to identify the aspects of their case that are material to the dispute. In the case at bar the parties and the court knew with reasonable certainty which claim terms were at issue with respect to infringement; discovery was not needed for this purpose.

*Vivid Technologies*, 200 F.3d at 803.

**4.** "Perhaps Centillion is reluctant to provide claim construction and its definition of terms for the Court and the defendants believing that it will avoid being estopped from creating different legal theories or definitions in this case or later cases." (Reply in Support of Defendants' Joint Motion for Expedited Ruling on the Insufficiency of Centillion's Opening Markman Brief (doc. no. 341), p. 3).

the discovery it has in this case), Centillion must have already developed clear constructions of its relevant claims and clear positions on the manners in which the defendants' products infringed those claims, so it is not an undue burden on Centillion to advance its constructions first. Furthermore, because the defending parties are entitled to review Centillion's positions on construction before offering their own, a simultaneous exchange of constructions would not be warranted. Any risk that Centillion's own constructions will prejudice its allegations of infringement or the validity of its patents is only incidental to the necessary *Markman* process in this Cause and is a risk that Centillion assumed when it filed this Cause.

Centillion asserted that, through the various claims charts it served on the defendants, it has already identified the relevant claims and elements, or sub-parts, of claims that it is asserting and had adequately provided its construction of those claims and elements. In the materials submitted by Centillion at the hearing as Hearing Exhibit 1, are two claims charts for the '270 and '290 patents which Centillion produced to all parties in response to former-defendant MCI Worldcom's Interrogatory no. 4. MCI Worldcom asked Centillion to state its construction of each element of each claim of the patents that Centillion alleges were infringed by MCI Worldcom, including, but not limited to, identifying the structure, material, or acts in the patent specification that corresponds to any means-plus-function element of a claim. Centillion objected to the interrogatory on several grounds, but, subject to the objections, provided the claims charts as a "further response" to the interrogatory in light of its then current knowledge of MCI Worldcom's product. While these charts appear to present some meanings of claims and references to the patent specifications—on the sufficiency of

which the Court will not comment at this time—the charts were produced subject to Centillion's objections and reflect its past understanding of a former party's allegedly infringing product and its past positions regarding construction. Centillion also submitted copies of charts it had served on the defendants which were intended to specify which features of each defendant's product infringed which claims or elements of claims of the patents in issue. But while these charts serve the purpose of identifying which claim terms are at issue with respect to infringement, they are not sufficient for providing Centillion's construction of the relevant claims and elements of claims.

■ Asserting that its claims terms should be given their ordinary and accustomed meanings, Centillion also argued that the defendants should first propose any unusual meanings they wish to ascribe to claim terms in order to more efficiently identify which terms are genuinely disputed and therefore require briefing and the Court's construction. In addition to improperly focusing on genuinely disputed meanings instead of genuinely disputed claims as the standard for the parties' briefing (at least the initial briefing) discussed above, this approach ignores what is often the crux of parties' *Markman* disputes: disputes over what the ordinary or accustomed meanings of claim terms are. What is selfevident to an infringement accuser might not be to an alleged infringer, especially in application, as a review of the case law illustrates. See, *e.g., Markman I, supra* (construction of "inventory"); *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,* Cause No. IP 98–1108–C–H/G, Entry on Defendants' Motion for Summary Judgment of Noninfringement, 2000 WL 684182, 2000 U.S. Dist. LEXIS 7105 (S.D.Ind., Feb. 9, 2000). By Centillion

providing its constructions of all material terms of all claims and elements of claims that it is asserting the defendants infringed, the defendants will be able to determine which constructions they dispute and then can brief only those terms. The Court can then limit its construction to only those claims and terms that are genuinely disputed. In addition, because "[c]laims are construed by the court as they would be understood by persons of skill in the field of the invention, for patents are written by and for skilled artisans", *Vivid Technologies*, 200 F.3d at 804, Centillion's explication of even the ordinary and accustomed meanings of asserted terms in a claim assists the Court because "[j]udges are not usually 'conversant in the particular technical art involved,' or capable of reading the patent specification and claims as one skilled in the art might", *Charles E. Hill & Associates v. Compuserve*, 65 F.Supp.2d 924, 928 (S.D.Ind. 1999). If it results that the defendants do not dispute Centillion's proposed ordinary and accustomed meaning of a term within an asserted claim and, therefore, the Court need not construe that particular term, the then-agreed construction might assist the Court's construction of disputed terms because claim terms are to be construed consistently with one another and with the overall purpose of the patent. *See Forest Laboratories, Inc. v. Abbott Laboratories*, 239 F.3d 1305, 1309–10 (Fed.Cir.2001) ("We also construe independent claims consistently with the claims that depend from them"); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed.Cir. 1997), *cert. denied*, 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.) ("Interpretation of a disputed claim term requires reference not only to the specification and prosecution history, but also to other claims"), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515,

133 L.Ed.2d 424 (1995); *Nichols v. Strike King Lure Co.*, No. CIV. A. 3:00–CV–1950–B, Memorandum Opinion and Order, 2000 WL 1593616, *6, 2000 U.S. Dist. LEXIS 15781, *18 (N.D.Texas, Oct.25, 2000); *Leggett & Platt Inc. v. Hickory Springs Manufacturing Co.*, No. 99 C 2614, Memorandum Opinion and Order, 2000 WL 1269363, *3, 2000 U.S. Dist. LEXIS 13063, *8 (N.D.Ill., Sept.5, 2000); *Purdue Pharma, L.P. v. Boehringer Ingelheim, GmbH*, 98 F.Supp.2d 362, 375 (S.D.N.Y.2000), *affirmed and remanded*, 237 F.3d 1359 (Fed.Cir.2001); *Charles E. Hill & Assoc.*, 65 F.Supp.2d at 927.

Centillion asked the Court to order the defendants to provide a full answer to its Interrogatory no. 18 before requiring Centillion to file a new *Markman* brief. The interrogatory asks: "For every claim of the Centillion patents, if you contend that you do not infringe such claim, explain why you do not infringe each element of each claim for each of [the accused products]." Because this interrogatory in effect seeks to shift the order and burdens of the *Markman* process, the request was denied. After the Court issues its *Markman* constructions, the defendants will be in a position to meaningfully answer this interrogatory.

In presenting its new *Markman* brief, Centillion is not limited to providing its constructions of the claim terms identified by the defendants in the March 13, 2001 Rankin Wigman letter (Hearing Exhibit no. 2) but must provide its constructions of all material and relevant terms of all asserted claims. The Court admonishes Centillion not to provide minimalist interpretations in an attempt to effectively shift the initial burden to the defendants.

Finally, because "the scope of a means-plus-function claims is strictly limited to the 'corresponding structure, material or acts' described in the specification, and

equivalents of that structure", *Jackson,* 139 F.Supp.2d at 1007 (applying 35 U.S.C. § 112, ¶ 6), Centillion must identify the specific structures, materials, and acts of the specification that apply to each means-plus-function claim term construed.

## Schedule

Thirty days from the date of the March 22, 2001 hearing, Centillion must file a new *Markman* brief setting forth its complete constructions of all terms in all asserted claims in conformity with the rulings set forth above. The defendants must file their responding briefs no later than 30 days after Centillion files its brief. Centillion shall have 15 days after the filing of each response brief to file a reply thereto.

No later than thirty days after filing its *Markman* reply briefs, Centillion shall make its disclosures under Fed.R.Civ.P. 26(a)(2) for *Markman* hearing experts. The defendants shall file their Rule 26(a)(2) *Markman* expert disclosures no later than 30 days after Centillion files its disclosures.

No later than 15 days after the defendants file their *Markman* response briefs, the parties shall file a joint notice of the earliest available times for the Court to convene a *Markman* hearing. By the same deadline, the parties shall file a joint motion for any necessary amendments to the case management plan.

The parties shall seek leave of Court if their *Markman* briefs will exceed 50 pages.