NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES L. DRIESSEN,**
*Appellant*

**v.**

**BEST BUY CO., INC., TARGET CORPORATION, WALMART, INC.,**
*Appellees*

---

2022-1907

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00198.

---

Decided:  March 9, 2023

---

JAMES L. DRIESSEN, Fairfax, VA, pro se.

J. CHRISTOPHER CARRAWAY, Klarquist Sparkman, LLP, Portland, OR, for appellees.  Also represented by SARAH ELISABETH JELSEMA, ANDREW M. MASON.

---

Before LOURIE, REYNA, and CHEN, *Circuit Judges*.

PER CURIAM.

James Driessen appeals a Final Written Decision by the Patent Trial and Appeal Board (Board) in an *inter partes* review proceeding involving U.S. Patent No. 10,304,052 ('052 patent). The Board determined that claims 1–20 of the '052 patent are unpatentable under 35 U.S.C. § 103(a). Because Mr. Driessen forfeited the claim construction arguments he now raises on appeal and does not challenge the Board's unpatentability determination independent of his forfeited arguments, we *affirm*.

## BACKGROUND

Mr. Driessen owns the '052 patent, which is generally directed to a "retail point of sale for the Internet." '052 patent col. 4 ll. 21−22. The '052 patent describes a card sold as a retail item in an in-person transaction. *Id.* at col. 4 ll. 59–60, col. 5 ll. 3−5. The card "provides a method of controlling web access" that allows the purchaser to access content or merchandise at "the website or specific web page(s) intended by the seller." *Id.* at col. 4 ll. 62–65, col. 5 ll. 3–15.

Independent claims 1, 14, and 19 each include a "preselection" limitation that is the focus of this appeal. For example, claim 1 recites:

1. A payment system for a preselected and itemized physical Internet merchandise product or a preselected and itemized particular content serialized downloadable media material object product, comprising:

a retail point of sale establishment; and

a physical access CARD for sale in said retail point of sale establishment wherein or whereon the physical access CARD is contained URL information providing the internee [sic] address of a prepaid Internet

> transaction location for obtaining or access-ing *a preselected and itemized physical Internet merchandise product or a preselected and itemized particular content serialized downloadable media material object product, wherein preselection and itemization of the preselected and itemized physical Internet merchandise product or the preselected and itemized particular content serialized downloadable media material object product is assessed before purchase of the physical access CARD, wherein purchase of the physical access CARD provides ownership of the preselected and itemized physical Internet merchandise product or the preselected and itemized particular content serialized downloadable media material object product.*

'052 patent, claim 1 (emphasis added).

Best Buy Co., Inc., Target Corporation, and Walmart, Inc. (collectively, Appellees) filed a petition for *inter partes* review, alleging that claims 1−20 would have been obvious over NetPack, alone or in combination with Boyle.[1]

---

[1]    Boyle is a published PCT application titled "A System and Method for Providing E-Commerce Access to an Internet Website." PCT Publication No. WO 00/17796, code (54). Appellees and the Board relied on Boyle as a secondary reference to NetPack for dependent claim 4 but relied only on NetPack for all other claims. *Best Buy Co. v. Driessen*, No. IPR2021-00198, 2021 WL 8086576, at *4–17 (P.T.A.B. Apr. 15, 2021). Mr. Driessen does not dispute that Boyle discloses the features of dependent claim 4 or that a skilled artisan would have been motivated to combine NetPack and Boyle.

NetPack is an excerpt from the website of a company and describes cards that allow "software manufacture[r]s[ or] some book publishers['s] [products or services], or other Internet products or services[,] to be represented and purchased in a retail store environment and then later down loaded from the Internet." *See* J.A. 751–58. NetPack discloses an exemplary card representing "Chat Pack," J.A. 751, which is software that "offers a linear communication language[] and file transfer ability," J.A. 797.

Appellees' petition did not seek construction of any claim terms, J.A. 143, but Mr. Driessen's Preliminary Patent Owner Response argued that NetPack failed to disclose the "preselection" limitation because NetPack only disclosed purchaser-side selection, J.A. 1185. Accordingly, the Board's Institution Decision specifically instructed the parties to brief the meaning of "preselected." J.A. 1670. Mr. Driessen's Patent Owner Response (POR) again argued that the "preselection" limitation should be construed as preselection by a seller prior to sale, rather than selection by a purchaser at the time of sale. J.A. 2298–2300. Appellees' Reply disagreed but also argued that NetPack's Chat Pack card satisfied Mr. Driessen's seller-side construction of the "preselection" limitation. J.A. 2359–64, 2368–71. At oral argument, Mr. Driessen seemed to argue, for the first time, that the '052 patent claims are directed to non-fungible tokens (NFTs). *See, e.g.*, J.A. 2491.

In its Final Written Decision, the Board determined that claims 1–20 were unpatentable under 35 U.S.C. § 103(a). *Best Buy Co. v. Driessen*, No. IPR2021-00198, 2021 WL 8086576, at *19 (P.T.A.B. Apr. 15, 2021). In doing so, the Board declined to "resolve whether preselection is limited to seller side preselection only" because the Board found that NetPack disclosed seller-side preselection. *Id.* at *4, *7–9, *13–17.

Mr. Driessen timely appealed, arguing that the Board erred by (1) not construing the claims as being directed to

a non-fungible token (NFT), and (2) not construing the "preselection" limitation.  Appellant's Br. 10–11, 34–39. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

We review the ultimate question of the proper construction of a patent claim de novo, with any underlying fact findings reviewed for substantial evidence.  *Dionex Softron GmbH v. Agilent Techs., Inc.*, 56 F.4th 1353, 1358 (Fed. Cir. 2023).  However, "[t]he Board is required to construe 'only those terms . . . that are in controversy, and only to the extent necessary to resolve the controversy.'" *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019) (alteration in original) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

## A

Mr. Driessen principally argues that the Board should have construed the '052 patent claims as being "directed to a form of an NFT," and therefore the Board's unpatentability determination should be reversed because neither NetPack nor Boyle disclose NFTs.  Appellant's Br. 4–5, 10, 34–39.  We disagree.  The Board is not required to consider new, untimely arguments that a patent owner presents for the first time during oral argument, and we review such a refusal for abuse of discretion.  *See Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369–70 (Fed. Cir. 2018) (explaining that "[u]nless [the Board] cho[oses] to exercise its waiver authority under 37 C.F.R. § 42.5(b), the Board [i]s obligated to dismiss . . . untimely argument[s] . . . raised for the first time during oral argument").

The Patent Office's guidelines provide that "[n]o new evidence or arguments may be presented at the oral argument."  *Id.* at 1369 (citing Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012)).  Moreover, the Board's Institution Decision warned that "any

arguments not raised in the [patent owner's] response may be deemed waived," J.A. 1691, and the Board expressly warned Mr. Driessen that his oral argument "is supposed to be limited to what was in [his POR] brief," *see* J.A. 2496. Mr. Driessen admits that "the words 'non-fungible token' did not appear in [his POR] . . . or Surreply" and that he discussed "*for the first time . . .* the nature of an NFT with the Board during oral argument." Appellant's Br. 35–36 (emphasis added). Because Mr. Driessen did not timely raise his NFT-based claim construction argument to the Board, the argument was forfeited, and the Board did not abuse its discretion in refusing to consider this argument. We need not address the argument's merits on appeal.

Even if we were to reach the argument's merits, we disagree with Mr. Driessen's NFT-based construction. Mr. Driessen refers this court to a publication from the U.S. Department of Treasury explaining that "NFTs are digital units, or tokens, *on an underlying blockchain* that represent ownership of images, videos, audio files, and other forms of media or ownership of physical or digital property." *See Study of the Facilitation of Money Laundering and Terror Finance Through the Trade in Works of Art*, U.S. Dep't of the Treasury 25 (Feb. 2022), https:// home.treasury.gov/system/files/136/Treasury_Study_WoA. pdf (emphasis added) (cited by Appellant's Br. 4 n.3). The '052 patent's specification, however, is silent regarding blockchain technology or non-fungible tokens. The patent instead only mentions tokens in a disclaimer, stating that "[t]his invention is *not* an Internet cash token system used as an anonymous means to get money to spend on the Internet." '052 patent col. 3 ll. 47–49 (emphasis added). Accordingly, construing the '052 patent claims, which lack any reference to NFTs, as directed to NFTs would expand the scope of the claims well beyond anything described in the claims or specification. *See Nystrom v. TREX Co.,* 424 F.3d 1136, 1145 (Fed. Cir. 2005) ("[I]n the absence of something in the written description and/or prosecution history

to provide explicit or implicit notice to the public—i.e., those of ordinary skill in the art—that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record, it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005)).

B

Mr. Driessen also argues that the Board erred by not construing the "preselection" limitation even though the parties offered competing constructions therefor. Appellant's Br. 38. We disagree.

The only claim construction dispute that Mr. Driessen raised in his POR and Surreply was whether the "preselection" limitation should be "directed to both *who* preselects and when preselected—rather than just when selection takes place" such that "[e]*ntity specific* preselection should be part of the claim construction analysis." J.A. 2298–99 (second emphasis added); *see also* J.A. 2285–86 (arguing that NetPack's "purchaser/end-user orchestrated *selection* . . . should not be confused with the seller side *preselection* . . . disclosed and claimed in the [']052 patent" (underlining added)); J.A. 2386–87 (arguing that the '052 patent claims are limited "to only internet items for sale with *seller-side preselection*" (emphasis added)). Mr. Driessen did not argue to the Board, as he does now on appeal, that "preselection" should also be construed based on *what* is preselected—i.e., a seller preselecting a discrete, non-fungible instance of a product.[2] *See* Appellant's Br. 14–16, 38.

---

[2]    Even if Mr. Driessen asserted during oral argument before the Board that NetPack only disclosed preselection of a "'[t]ype' of product offered by a seller" rather than a discrete product offering, *see, e.g.*, Appellant's Br. 13

Accordingly, this argument is forfeited.[3] *See Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below." (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1346–47 (Fed. Cir. 2001)).

CONCLUSION

We have considered Mr. Driessen's remaining arguments and find them unpersuasive. Because Mr. Driessen does not challenge the correctness of the Board's Final Written Decision independent of his forfeited arguments, we affirm the Board's determination that claims 1–20 are unpatentable.

**AFFIRMED**

COSTS

Costs to Appellees.

---

n.14, that argument was untimely for being raised at oral argument to the Board in the first instance. *See Dell*, 884 F.3d at 1369–70.

[3]    The Board's Final Written Decision relied on Mr. Driessen's entity-focused construction for the "preselection" limitation. *See e.g.*, *Best Buy*, 2021 WL 8086576, at *8.