Opinion for the court filed
Per Curiam.
Nidec Motor Corporation (“Nidec") appeals a final written decision of the Patent Trial and Appeal Board (“Board”) in an inter partes review (“IPR”). The Board determined that claims 1-3, 8, 9, 12, 16, and 19 of U.S. Patent No. 7,626,349 (the “’349 Patent”) are invalid as anticipated or obvious. We affirm.
Background
Appellant Nidec owns the ’394 patent, which is directed to low-noise heating, ventilating, and air conditioning (“HVAC”) systems. The patented HVAC system includes a permanent magnet electric motor that turns a. fan in order; to. move air through ductwork. As compared to conventional HVAC systems, the invention achieves quieter operation of the motor due to improvements in the motor controller. Specifically, the improved motor controller performs sinewave commutation instead of more conventional square-wave commutation. Commutation refers generally to the repeated sequencing of electrical currents applied to windings within the permanent magnet motor that causes the motor to rotate. Square-wave commutation involves abrupt changes -in the voltage applied- to a given winding as the sequence progresses, similar to repeatedly flipping a switch between three voltage states: positive, zero, and négative. Sinewave commutation, by contrast, involves more gradual *1015 and continuous oscillations in applied voltage, similar to sliding a dimmer switch between those states. As compared to square-wave commutation, sinewave commutation results in less vibration and noise generated from the electric motor.
Appellees Zhongshan Broad Ocean Motor Co., Ltd.; Broad Ocean Motor. LL.C; and Broad Ocean Technologies, LLC (collectively, “Broad Ocean”) filed an IPR petition challenging claims 1-3, 8, 9, 12, 16, and 19 of the ’349 patent (the “challenged claims”). In a revised petition (“First Petition”), Broad Ocean asserted that the challenged claims are invalid as obvious over the combination of U.S. Patent No. 5,410,-230 (“Bessier”) and a published doctoral thesis by Peter Franz Kocybik (“Kocy-bik”). Broad Ocean also asserted that the challenged claims are invalid as anticipated by Japanese Patent Publication JP 2003-348885 (“Hideji”).
On January 21, 2015, the Board instituted review on the ground of obviousness over Bessier and Kocybik. The Board declined to institute review on the ground of anticipation by Hideji, however, because Broad Ocean had failed to provide an affidavit attesting to the accuracy of the submitted translation of Hideji as required by 37 C.F.R. § 42.63(b).
About a month later, Broad Ocean filed a second petition for IPR (“Second Petition”), again asserting that the challenged claims are anticipated by Hideji. This time, Broad Ocean included the required affidavit. At the same time, Broad Ocean requested that the Board join the Second Petition with Broad Ocean’s already-instituted IPR involving the First Petition pursuant to 35 U.S.C. § 315(c) (allowing for joinder in an IPR at the discretion of the Director of the United States Patent and Trademark Office (“Director”)).
On July 20, 2015, a panel of three Administrative Patent Judges again declined to institute review on the ground that Hi-deji anticipates. The panel majority determined that Broad Ocean had been served with a complaint alleging infringement of the ’349 patent on September 25, 2013— more than one year before Broad Ocean filed the Second Petition — and, therefore, the Second Petition was time barred under 35 U.S.C. § 315(b). The majority further held that the exception to the time bar for requests for joinder under 35 U.S.C. § 315(b), (c), did not apply here because, according to the majority’s interpretation, the joinder provision does not permit a party to join issues to a proceeding to which it is already a party.
Broad‘Ocean requested -a rehearing of the panel’s decision, which was granted by an expanded panel of five Administrative Patent Judges. The expanded administrative panel set aside the original panel’s decision and concluded that
§ 315(c) permits the joinder of any person who properly files a petition under § 311, including a petitioner who is already a party to the earlier -instituted [IPR]. We also conclude that § 315(c) encompasses both party joinder and issue joinder, and, as such, permits join-der of issues, including new grounds of unpatentability, presented in the-petition that accompanies the request for join-der.
J.A. 936 (citations omitted). Having determined that the joinder provision is broad enough to permit joinder with respect to the Second Petition, the expanded panel instituted review of the Second Petition and granted Broad Ocean’s request to join the proceeding with the earlier-instituted IPR.
On May 9, 2016, the Board, consisting of the expanded panel, issued a Final Written Decision in the joined proceedings.. The Board determined that all of the chai- *1016 lenged claims are unpatentable under 35 U.S.C. § 103 as obvious over Bessler and Kocybik and that all of the challenged claims are unpatentable under 35 U.S.C. § 102 as anticipated by Hideji.
Nidec appealed the Board’s joinder decision as well as the Board’s conclusions as to obviousness and anticipation. Broad Ocean responded, and the Director intervened to support the Board’s joinder decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).
Discussion
We review the Board’s legal conclusions de novo and its factual findings for substantial evidence. In re Affinity Labs of Tex., LLC, 856 F.3d 883, 889 (Fed. Cir. 2017).
I
Both Broad Ocean and the Director argue that the Board properly applied the joinder and time bar statutes to allow join-der and institution in this case. Nidec disagrees. We need not resolve this dispute. Nor need we address the Director’s and Broad Ocean’s arguments that the Board’s joinder determination is non-appealable in light of 35 U.S.C. § 314(d)’s bar of judicial review for institution decisions or Nidec’s argument that the Board’s practice of expanding panels violates due process. For the reasons set forth below, we affirm the Board’s conclusion that all of the challenged claims are unpatentable as obvious over Bessler and Kocybik. Because there is no dispute that Broad Ocean timely filed the First Petition (containing the obviousness ground), the issues on appeal relating only to the Board’s joinder determination as to anticipation ultimately do not affect the outcome of this case. Both parties agree that, if we affirm as to obviousness, we need not address Nidec’s argument that various procedural aspects of the Board’s joinder decision require reversal of its holding concerning anticipation by Hideji. See Oral Arg. at 1:28-2:33 (June 8, 2017), available at http://oralarguments. eafc.uscourts.gov/default.aspx?fl=2016-2321.mp3 (Nidec agreeing that we need not address the anticipation ground based on Hideji in any respect if we determine that the Board was correct in its obviousness determination under Bessler and Ko-cybik).
II
Nidec argues that the Board erred in concluding that the challenged claims would have been obvious to a person of ordinary skill in the art based on the combination of Bessler and Kocybik. Obviousness is a question of law based on underlying questions of fact. Belden Inc. v. Berk-Tek LLC, 805 F.3d 1064, 1073 (Fed. Cir. 2015).
Nidec submits that claim 1 is representative of the independent claims at issue, and Nidec does not raise patentability arguments that are specific to any dependent claims. Claim 1 is reproduced below:
1. A heating, ventilating and/or air conditioning (HVAC) system comprising a system controller, a motor controller, an air-moving component, and a permanent magnet motor having a stationary assembly, a rotatable assembly in magnetic coupling relation to the stationary assembly, and a shaft coupled to the air-moving component, wherein the motor controller is configured for performing sinewave commutation, using independent values of Q and d axis currents, in response to one or more control signals received from the system controller to produce continuous phase currents in *1017 the permanent magnet motor for driving the air-moving component.
’349 Patent, col. 5 II. 34-45.
Nidec does not appear to dispute that the claimed elements are described in the prior art. In general, Bessler describes an HVAC system that includes a thermostat, a motor controller (or microprocessor), and an electronically commutated motor that turns a fan (or a “blower ECM motor”). See, e.g., J.A. 223, col. 4 ll. 35-68 (thermostat); id. col. 5 ll. 45-48 (microprocessor); id. col. 5 l. 23 (blower ECM motor). Bes-sler does not describe the claimed sine-wave commutation or the use of independent Q and d axis currents. However, the Board determined — and Nidec does not dispute — that Kocybik describes sinewave commutation as well as the use of independent Q and d axis currents in electric motors, although Kocybik does not mention HVAC systems. And Kocybik does not limit the application of such commutation to “high precision control tasks,” as Nidec contends. Nidec Reply Br. 7.
The Board determined that “a person of ordinary skill in the art would have effected the combination proposed” — “configuring the system of Bessler to perform sinewave commutation in the manner described in Kocybik.” J.A. 29. The Board concluded that “the use of sinewave commutation and independent Q and d axis currents would have provided predictable results to address known problems associated with other types of motors.” J.A. 29. Nidec asks us to reweigh the evidence the Board used to make its determination, which we may not do. See In re Warsaw Orthopedic, Inc., 832 F.3d 1327, 1334 (Fed. Cir. 2016).
Nidec makes two arguments as to why the Board’s conclusion was erroneous. First, Nidec argues that the Board wrongly construed the term “HVAC system” in the claim preambles to be non-limiting. J.A. 21. Whether or not Nidec is correct, the result does not change. The Board specifically addressed the issue by stating, “[ojur conclusion would be unaffected by a determination that the preambles of the claims reciting an HVAC system are limiting. Although Kocybik is not directed specifically to HVAC systems, Petitioner relies on Bessler for such a teaching.” J.A. 34 n.10. There is no dispute that Bessler teaches an HVAC system as recited in the claims. Because we need only construe terms “that are in controversy, and only to the extent necessary to resolve the controversy,” Vivid Techs., Inc. v. Am. Sci. & Eng’g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999), we need not construe the claim preambles here where the construction is not “material to the [obviousness] dispute,” id. We see no error in the Board’s decision in this regard.
Second, Nidec argues that Bessler teaches away from the asserted combination. Nidec argues that the purpose of Bessler is to reduce the complexity of HVAC systems by eliminating the need for a conventional system controller. According to Nidec, incorporating sinewave commutation into an HVAC system only increases complexity, which is contrary to the fundamental goal of Bessler. Thus, Ni-dec urges that a person of ordinary skill in the art would not have combined the teachings of Bessler and Kocybik. We disagree.
There is nothing in Bessler that “criticize[s], discredit[s], or otherwise discourage[s]” the use of sinewave commutation in HVAC systems. Meiresonne v. Google, Inc., 849 F.3d 1379, 1382 (Fed. Cir. 2017) (quoting Galderma Labs., L.P. v. Tolmar, Inc., 737 F.3d 731, 738 (Fed. Cir. 2013)). As Nidec has conceded, Bessler does not even mention sinewave commutation. Oral Arg. at 13:32-13:47. Instead, Bessler states *1018 only that “[i]t is an object of this invention to provide a central [HVAC] system which does not require a system controller.” J.A. 222, col. 2 ll. 3-5. This statement does not teach away from sinewave commutation.
For support, Nidec points out that each challenged claim requires a “system controller” and that Bessler teaches away from the use of a system controller that is separate from a motor controller and that receives and processes system demand signals. But this argument has limited relevance to sinewave commutation. In fact, the challenged claims make, clear that it is the “motor controller” (not the system com troller eliminated in Bessler) that performs sinewave commutation. See, e.g., ’349 Patent, col. 5 11.. 39 — 41 (claim 1 reciting “wherein the motor controller is configured for pel-forming sinewave commutation”). Nidec does not dispute that Bessler teaches a motor controller.[1]
And the ’349 Patent specification uses the term “system controller” in a different sense than in Bessler. The ’349 Patent states that “the system controller ... may be a thermostat.” Id. col. 411. 35-36. There is no dispute that Bessler teaches the use of a thermostat in an HVAC system as opposed to the eliminated, system controller which receives and processes signals from a thermostat. See J.A. 223, col. 4 11. 31-68 (Bessler describing the functions of a “conventional thermostat” in a preferred embodiment).
However, Nidec argues that Bessler’s thermostat is too primitive to qualify as the system controller required by the ’349 Patent claims. Specifically, the claimed system controller must be capable of sending “one or more control signals” to the claimed motor controller. E.g., '349 Patent, col. 5 1. 42 (claim 1); see also id. col. 61. 50 (claim 19 reciting “at least one control signal from a system controller”). Nidec points to a portion of the ’349 Patent specification that explains, “[s]uch control signals may represent, for example, a desired torque or speed of the motor 406. Alternatively, the control signals may represent a desired airflow to be produced by the air-moving component 410.” Id. col. 31. 66-col. 4 1. 2. By contrast, Bessler’s thermostat only “generales] a two state (on/off) signal.” J.A. 223, col. 4 11. 42-43. Thus, Nidec argues, Bessler’s thermostat is incapable of generating the “control signals” required by the claims of the.’349 Patent.
Nidec too narrowly construes the “control signals” limitation. In an IPR involving an unexpired patent, the “broadest reasonable construction” standard governs. Cuozzo Speed Techs., LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 2144-45, 195 L.Ed.2d 423 (2016); 37 C.F.R. § 42.100(b). The ’349 Patent specification explains that “torque,” “speed,” and “airflow” are provided only as examples of the types of control signals that might be used; it is not an exhaustive list. See ’349 Patent, col. 3 1. 66-col. 4 1. 2. (“for example, a desired torque or speed” and “[d]ltematively, the control signals may represent a desired airflow” (emphases added)). Moreover, analysis of the dependent claims supports a broader construction than that advanced by Nidec. For instance, dependent claim- 20 provides *1019 in relevant part, “wherein receiving includes receiving at least one control signal representing a desired airflow for the blower, a desired torque of the permanent magnet motor, or a desired speed of the permanent magnet motor.” Id, col. 6 11. 57-GO (emphases added). This limitation confirms that the “control signals” limitation recited in the independent claims encompasses other signals in addition to “torque,” “speed,” and “airflow.” An on/off signal amounts to a control signal because a motor controller cannot carry out its claimed function of “performing sinewave commutation ... in response to one or more control signals” if it does not receive at least an “on” signal from the thermostat. ’349 Patent,- col. 5 11. 40-42. Indeed, Nidec concedes that “Bessler .. describes ... a motor controller that is directly responsive to a two-state (on/off) temperature signal provided by-a thermostat.” Nidec Opening Br, 12.
We conclude, that the Bessler thermostat is a “system controller” and that the on/off signals it generates are “control signals” encompassed by the ’349 Patent’s claims. The Board did not err in concluding that the challenged claims would have been obvious over the combination of Bessler and Kocybik.[2]
Conclusion
In summary, we conclude that the Board correctly determined that challenged claims. 1-3, 8, 9, 12, 16, and 19 of the ’349 Patent are invalid under § 103 as obvious over the combination of Bessler and Kocy-bik. We reach no conclusion as to. the Board’s determinations involving the anticipation ground based on Hideji.
Affirmed
Costs
Costs to appellee.

. Nidec argues that a motor controller capa- • ble of achieving sinewave commutation requires an advanced microprocessor, such as a "digital signal processor” (DSP), and that Bessler teaches away from the use of such hardware. In fact, however, Bessler does not limit or suggest limiting the types of microprocessors that might be used, and Kocybik teaches the use of DSPs with permanent magnet motors. Kocybik explains that "[m]ass production [of DSPs] has [led] to á decrease in prices; leading to a whole range of reasonably priced and well-tested devices available to implement digital control strategies.” J.A. 267.

. Although the Board invalidated dependent claim 12, it is not clear from Nidec's briefs whether claim 12 is at issue on appeal. See, e.g., Nidec Opening Br. 23 (omitting reference to claim 12); id. at 10-11 (omitting summary of claim 12 and identification of claim 12 as one of the claims-at-issue); but see id. at 19, 20, 69, Nidec Reply Br. 31 (arguing that the Board erred in invalidating, inter alia, claim 12). In any event, both at the Board level and on appeal, claim 12 was not separately argued,